STATE OF NORTH CAROLINA BY AND THROUGH ITS NEW BERN CHILD SUP-
PORT AGENCY, EX REL., SADIE W. LEWIS v. JAMES DANIEL LEWIS

No. 391PA83

(Filed 28 August 1984)

**Judgments § 44; Parent and Child § 9— conviction for refusal to support children—
paternity issue in civil action—collateral estoppel**

Defendant's criminal conviction under G.S. 14-322 for the willful neglect of
and refusal to support his minor children collaterally estopped him from
relitigating the issue of paternity in a subsequent civil action by the State for
indemnification of its payments of support to defendant's children and for a
continuing order of support by defendant since defendant's conviction under
G.S. 14-322 necessarily required a finding that he was the father of the minor
children, and the State in the civil action was identical to or in privity with the
State in the prior criminal action.

ON defendant's petition for discretionary review of a decision
by the Court of Appeals, 63 N.C. App. 98, 303 S.E. 2d 627 (1983),
affirming, in part, an order of *Judge H. Horton Rountree*
presiding in the CARTERET County District Court.

*Rufus L. Edmisten, Attorney General, by Lemuel W. Hinton
and Clifton H. Duke, Assistant Attorneys General; Charles H.
Turner, Jr. for the state.*

*Mason and Phillips, P.A., by L. Patten Mason for defendant
appellant.*

EXUM, Justice.

The issue raised in this appeal is whether defendant's
criminal conviction for the willful neglect of and refusal to sup-
port his minor children estops him from relitigating the issue of
paternity in a subsequent civil action. We hold the doctrine of col-
lateral estoppel bars defendant from relitigating the paternity
issue and affirm the judgment of the Court of Appeals.

I.

In 1976 defendant, James Daniel Lewis, was charged under
N.C. Gen. Stat. § 14-322 with the willful neglect of and refusal to
support his four minor children, then ages sixteen, fourteen, ten
and seven. After a nonjury trial upon defendant's plea of not
guilty, Judge J. W. Roberts found defendant guilty. On 27 April

1976 Judge Roberts entered judgment against defendant, ordering him to pay $50 to the clerk of the superior court for the use and benefit of Sadie Lewis, the children's mother, and court costs, and placing defendant on probation for five years on the condition that he remain gainfully employed full time and pay $45 per week to the clerk's office for the support of his children.[1]

On 15 October 1976 Sadie Lewis instituted a civil action against defendant for divorce from bed and board, custody of four children, and child support. When defendant failed to answer, a default judgment was entered against him which provided, among other things, that he pay $75 per week as child support. A show cause order was subsequently entered requiring defendant to appear and explain why he should not be held in contempt for failure to comply with the terms of the default judgment. Defendant successfully moved to vacate the default judgment due to a failure of service of process. Defendant then filed an answer, alleging that he was not the father of the four children and requesting blood grouping tests.

On 14 January 1981 the state, through its New Bern Child Support Agency, filed the complaint which initiated the present case. The state sought indemnification for public assistance which it had paid for the support of the two youngest minor children allegedly born to defendant and Sadie Lewis and an order directing defendant to provide continuing support.[2] Defendant answered the state's complaint and alleged that he was not the father of these two minor children, requested blood grouping tests, and counterclaimed for reimbursement of child support payments he previously had paid the state. The state moved to dismiss defendant's counterclaim for failure to state a claim upon which relief can be granted and requested the court to deny defendant's motion for blood grouping tests. The state contended that defendant's prior conviction for willful neglect of and refusal to support these children estopped him from denying paternity.

1. Although the judgment itself does not expressly specify that these $45 per week payments were for the children's support, it is clear from the nature of the proceeding, and indeed a subsequent proceeding brought to enforce the judgment, that the payments were ordered for the children's support.

2. When defendant was convicted for failure to support his children in 1976, four minor children were involved. Two of these children had reached the age of majority by 1981 when the instant action was begun.

After a hearing on this motion, the trial court held that defendant was estopped from denying paternity of the two minor children, dismissed defendant's counterclaim, dismissed the state's claim for back support, and ordered defendant to pay $22.50 each week for the support of the two minor children.

Both parties appealed. The Court of Appeals affirmed the dismissal of defendant's counterclaims and the denial of the defendant's request for blood grouping tests.[3] We allowed defendant's petition for discretionary review on 3 November 1983.

## II.

We must decide whether defendant is estopped from raising the issue of paternity in this civil action by his prior conviction under N.C. Gen. Stat. § 14-322 for willful neglect of and refusal to support the same children whose paternity he now questions. A determination of this issue involves both the notions of *res judicata* and collateral estoppel. We have previously defined these terms as follows:

> *Res judicata* deals with the effect of a former judgment in favor of a party upon a subsequent attempt by the other party to relitigate the same cause of action. In *Masters v. Dunstan*, 256 N.C. 520, 124 S.E. 2d 574 (1962), this Court stated:
>
>> ' "It is fundamental that a final judgment, rendered on the merits, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and privies, in all other actions involving the same matter." *Bryant v. Shields*, 220 N.C. 628, 18 S.E. 2d 157. ". . . [W]hen a fact has been agreed upon or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." *Humphrey v. Faison*, 247 N.C. 127, 100 S.E. 2d 524, citing and quoting *Armfield v. Moore*, 44 N.C. 157.

---

3. The Court of Appeals also vacated the trial court's dismissal of the state's claim for past public assistance paid and its order which directed defendant to make weekly child support payments. The validity of these determinations was neither briefed nor argued by the parties and is not before us.

'An estoppel by judgment arises when there has been a final judgment or decree, necessarily determining a fact, question or right in issue, rendered by a court of record and of competent jurisdiction, and there is a later suit involving an issue as to the identical fact, question or right theretofore determined, and involving identical parties or parties in privity with a party or parties to the prior suit. *Cannon v. Cannon*, 223 N.C. 664, 28 S.E. 2d 240; *Distributing Co. v. Carraway*, 196 N.C. 58, 144 S.E. 535.'

*King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E. 2d 799, 804-05 (1973). Essentially the doctrine of *res judicata* provides that a final adjudication on the merits in a prior suit bars a subsequent, identical cause of action between the same parties or their privies. *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948). Similarly, the doctrine of collateral estoppel operates to bar the relitigation of issues previously determined. It constitutes a much more narrow application of the principle of *res judicata. Id.* at 597-98. Collateral estoppel provides that

the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' *Cromwell v. Sac County* [94 U.S. 351, 353 (1876)]. . . . Since the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated. Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.

*Id.* at 598.

Thus *res judicata* generally precludes relitigation of claims or actions. Collateral estoppel operates to preclude the parties or their privies in a former action from relitigating in a subsequent action issues necessarily determined in the former action. *Settle v. Beasley*, 309 N.C. 616, 619, 308 S.E. 2d 288, 290 (1983).

For defendant to be collaterally estopped from relitigating the issue of paternity, then, two elements must exist: (1) The issue of paternity must necessarily have been determined previously and (2) the parties to that prior action must be identical or privies to the parties in the instant case. We consider both points seriatim.

Defendant contends that a conviction under section 14-322 does not necessitate a finding that he was the father of the minor children. This position is untenable.

Section 14-322 provides, in pertinent part:

> (d) Any parent who shall willfully neglect or refuse to provide adequate support for that parent's child, whether natural or adopted, and whether or not the parent abandons the child, shall be guilty of a misdemeanor and upon conviction shall be punished according to subsection (f). Willful neglect or refusal to provide adequate support of a child shall constitute a continuing offense and shall not be barred by any statute of limitations until the youngest living child of the parent shall reach the age of 18 years.

In order to obtain a conviction under this provision, the state must prove three elements beyond a reasonable doubt: (1) that the defendant was the father of the children; (2) that the defendant failed to provide the children with adequate support; and (3) that such failure was willful.

It is well established in North Carolina that a defendant cannot be convicted of a crime unless the evidence adequately sustains every constituent element of the offense charged. *State v. McCoy*, 303 N.C. 1, 24, 277 S.E. 2d 515, 532 (1981); *State v. Ferguson*, 191 N.C. 668, 670, 132 S.E. 664, 665 (1926); *State v. Crook*, 189 N.C. 545, 546, 127 S.E. 579, 580 (1925). Judge Roberts heard the evidence and found defendant guilty of the willful failure to support his minor children. This verdict necessitated a finding, express or implied, that defendant was the father of the minor children. As we noted in *Tidwell v. Booker*, 290 N.C. 98, 110, 225 S.E. 2d 816, 823 (1976),

> This Court has said on numerous occasions that the question of paternity is 'incidental to the prosecution for the crime of nonsupport.' *State v. Green* [277 N.C. 188, 193, 176

S.E. 2d 756, 760 (1970)]; *State v. Robinson* [236 N.C. 408, 411, 72 S.E. 2d 857, 859 (1952)]; *State v. Summerlin*, 224 N.C. 178 [, 180], 29 S.E. 2d 462 [, 463] (1944). The question of paternity is 'incidental' to the criminal offense alleged only in the sense that proof of paternity is not proof of wilful nonsupport of the child. An affirmative answer to the question of paternity is, however, an indispensable prerequisite to the defendant's conviction on the criminal charge.

Defendant's conviction under section 14-322 necessarily required a finding that he was the father of Sadie Lewis's children. Thus the first necessary element for the application of collateral estoppel is satisfied.

Defendant further contends that the state in this action is not identical to or in privity with the state in the prior criminal action. We find this argument feckless.

The state prosecuted the prior criminal action for nonsupport, just as it instituted the present civil action for indemnification of its payments of support to defendant's children and for a continuing order of support by defendant. The state was not a nominal party in the criminal action; it is likewise not a nominal party in this action. In both cases the state pursued its interest in having a parent financially support his children. Thus the state occupies identical positions in both the criminal action for nonsupport and the current civil action for indemnification and continued support.

Defendant relies almost exclusively on *Tidwell* and *Settle.* We find both cases distinguishable.

In *Tidwell*, Booker, the defendant, was convicted in 1963 of the willful nonsupport of illegitimate children, with the trial court finding as a fact that Booker admitted that he was the father of the illegitimate children. Booker's six-month sentence was suspended upon the condition that he pay a certain sum each week for the support of his child. Booker did not appeal. He made eleven payments over a period of two years. On 9 October 1974 the mother of the child instituted an action to (1) have Booker declared the biological father of the minor child; (2) require Booker to pay a lump sum for child support which she had previously paid; and (3) require Booker to make future, periodic child

support payments. Booker filed an answer in which he denied paternity. The trial court, at a hearing on the defenses, found that Booker's 1963 conviction had finally adjudicated the issue of paternity and denied Booker the right to relitigate that issue.

We reversed, holding that collateral estoppel did not apply because the parties to the criminal and civil proceedings were neither the same nor in privity. 290 N.C. at 110-14, 225 S.E. 2d at 823-26. The state and the mother were not in privity in *Tidwell*, unlike the positions occupied by the state herein. *Tidwell* is inapplicable to the present case.

In *Settle*, the Johnston County Child Support Agency, on behalf and in the name of the mother, sued Beasley for child support. The trial court concluded that Beasley was not the child's father. No appeal was taken from this judgment.

Subsequently the minor child, through his guardian, sued Beasley, alleging that he was the child's father. Beasley answered and denied paternity. The trial court allowed Beasley's motion for summary judgment on the theory that the minor child was in privity with his mother, the plaintiff in the prior civil action. The child was thereby estopped from relitigating the issue of paternity.

We reversed, holding that no privity existed between the mother-plaintiff in the prior action and the child-plaintiff in the latter action. The prior action, brought by the state agency in the name of the mother, was an action for the state's benefit in an attempt to recoup money which it paid for the support of the child. In the latter action, the child was seeking support in his own right. The interests of the two plaintiffs were separate and distinct, preventing privity from existing between them. 309 N.C. at 619-23, 308 S.E. 2d at 290-92. In the absence of privity, collateral estoppel did not prevent the child from litigating the paternity issue in his own right.

Unlike *Tidwell* and *Settle*, the parties here are identical or at least in privity. Here the state instituted a criminal action against defendant for nonsupport and succeeded. Five years later, the state again brought suit, this time in the form of a civil action against defendant for reimbursement of public assistance paid for the support of his two children and for an order directing defend-

ant to provide continued support. The state herein is the same party which challenged defendant in the prior suit, pursuing its same financial interest in securing support payments by a parent for his children in both actions.

Since the issue of defendant's paternity has been necessarily determined in the prior criminal action and since the parties to that prior criminal action are the same as or in privity with the parties to this civil action, collateral estoppel applies. Accordingly, defendant is estopped from relitigating the issue of paternity which was necessarily adjudicated and resolved adversely to him in the 1976 criminal action. Therefore the decision of the Court of Appeals is

Affirmed.